UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTHONY BRADLEY,

                Plaintiff,

                                        Case No. 1:21-cv-741

v.

                                        Honorable Sally J. Berens

SCOTT YOKOM et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Burton.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues MTU Warden Dewayne Burton and MTU Deputy Warden Scott Yokom.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

According to the complaint and attachments to it, Plaintiff alleges that Deputy Warden Yokom retaliated against him, which resulted in his removal from the Calvin Prison Initiative (CPI). CPI was a highly selective program that partnered the MDOC with Calvin College. A flyer about CPI, which Plaintiff attached to his complaint, indicates that students who were accepted into the program would "not pay the cost of tuition, textbooks, or computers." (ECF No. 1-2, PageID.24.) To apply to CPI, applicants must not have had a Class I misconduct in the prior two years or any misconduct in the last year. In support of his application, Plaintiff received recommendations from prison officials at Chippewa Correctional Facility, where he was incarcerated at the time. Plaintiff further completed three essays to compete for one of the 20 spots available each year. Prisoners who were accepted and enrolled as students in CPI would earn a bachelor's degree in five years majoring in ministry leadership. During the five years a student pursued his studies, the MDOC would put a hold on his housing to prevent transfers. In late May 2018, CPI's administration notified Plaintiff that they had accepted him into the program for matriculation that fall. In order to attend CPI, Plaintiff transferred on or about June 19, 2018, from Chippewa Correctional Facility to MTU.

Approximately two months later, on August 20, 2018, Plaintiff left a CPI class and was "placed in temporary segregation on a notice of intent to classify to administrative segregation, pending an investigation involving potential activity in organizing prison strikes/riots per Captain Pettit and Defendant Deputy Warden Scott Yokom." (Compl., ECF No. 1, PageID.5.) The next day, August 21, 2018, Captain Pettit (not a party) wrote Plaintiff a Class I misconduct charging him with inciting a riot or strike based on a letter sent to Plaintiff by Amani Sawari (not a party).

According to Plaintiff, the letter was one of two sent by Sawari that asked for help collecting signatures to add a ballot measure in Michigan that, if passed, would restore a "good

time" credit system for state prison sentences. Plaintiff asserts that he sent a kite to Warden Burton on August 24, 2018, complaining that Deputy Warden Yokom and Captain Pettit falsely represented Plaintiff's conduct and the contents of the letter that he received. However, under MDOC policies Plaintiff purportedly could not file a grievance on the issue until the misconduct charge was resolved.

On August 27, 2018, Plaintiff had an initial administrative hearing for the misconduct charge. According to the hearing report, Plaintiff alleged that the original letter from Sawari contained information on criminal justice reform and on a "good time" petition. (ECF No. 1-8, PageID.31.) Plaintiff had previously presented the letter to Deputy Warden Yokom for approval, apparently because Plaintiff wanted to share the information about the good time petition with the National Lifers of America (NLA). Plaintiff asserted that he never would have presented the letter to Yokom if it discussed prison riots or strikes and therefore questioned whether something was added. The hearing officer postponed the hearing until August 30, 2018, because Plaintiff asked to have the original letter for the hearing, and the hearing officer also wanted the original letter presented.

The hearing officer further asked Captain Pettit to submit a statement addressing the basis for one of Pettit's statements in the misconduct report. In the misconduct report, Pettit stated that Plaintiff knew the website that had information about the good time ballot proposal petition also contained information related to a national prison strike. Pettit relied in part on that accusation to assert that Plaintiff therefore attempted to spread the national strike information via the NLA. The hearing officer asked Pettit to explain the basis for his statement given that prisoners cannot access websites. The complaint does not explain whether Pettit ever produced an explanation.

On August 28, 2018, between the hearings, Deputy Warden Yokom allegedly stopped at Plaintiff's cell and said, "Oh you want to write the warden and complain about me and my officer[?]" (Compl., ECF No. 1, PageID.6.) Plaintiff said that he did, presumably in reference to the kite sent on August 24. Plaintiff further stated that he intended to write a grievance and told Yokom that he came to the prison to go to college, not to promote a prison strike. Yokom responded, "you can forget about college[;] that's over with." (*Id.*) Plaintiff and Yokom disagreed whether Plaintiff could be removed from CPI if the hearing officer found him not guilty, but Yokom purportedly "said that he didn't care . . . and whatever happens after [Plaintiff's] misconduct hearing that [Yokom's] transferring [Plaintiff] out of the facility." (*Id.*) Plaintiff avers that he again told Yokom that he would file a grievance and a civil action.

Two days later, on August 30, 2018, the hearing officer dismissed the misconduct charge because Deputy Warden Yokom and Captain Pettit failed to provide the original letter as directed. Upon dismissal, Plaintiff returned from segregation to the CPI students' housing unit.

Subsequently, on August 31, 2018, Plaintiff returned to his CPI courses. CPI co-Director de Groot (not a party) welcomed Plaintiff back and, according to the complaint, told Plaintiff that because the hearing officer dismissed the misconduct charge, Plaintiff's placement in the program was not in jeopardy.

However, later that day, Deputy Warden Yokom called Plaintiff into his office with the other CPI leader, co-Director Cioffi. Plaintiff alleges that, in front of the Cioffi, Yokom told Plaintiff that Plaintiff had lied about Amani Sawari and her website.[2] Yokom further stated that Plaintiff had lied to the hearings officer and that the misconduct was dismissed on a technicality. Yokom then told Cioffi that Plaintiff "was not the type of person [CPI] would want to send out as

---

[2] The complaint is not clear whether Yokom accused Plaintiff of lying to Yokom or to Cioffi.

a minist[]ry leader and [to] receive a free bachelor[']s degree from Calvin College." (*Id.*, PageID.9.) Yokom apparently shared Plaintiff's hearing report and a portion of the letter from Amani Sawari that mentioned the "National Prison Strike."[3] Plaintiff refuted the allegations that he had lied, but Cioffi said that he believed that Yokom demonstrated that Plaintiff had violated Calvin College's code of ethics and consequently dropped Plaintiff from CPI. In response, Plaintiff again told Yokom that he would file a grievance against him for retaliation. Yokom ordered Plaintiff not to return to his CPI class and further informed Plaintiff that he would move to a non-CPI unit.

After the meeting with Yokom and Cioffi, Plaintiff sent a kite to Warden Burton complaining of Yokom's conduct, but Burton did not respond. On September 5, 2018, Plaintiff filed a grievance against Deputy Warden Yokom alleging that Yokom retaliated against him in response to Plaintiff's August 24 kite to the warden and Plaintiff's statement that he intended to file a grievance. On September 7, 2018, Yokom approved Plaintiff's transfer to another prison, and Plaintiff moved from MTU to MCF several days later, on September 13, 2018.

Plaintiff alleges that he wrote to Burton on several more occasions but did not receive a response until November 2018 when Burton upheld a grievance rejection. Plaintiff received another grievance rejection in January 2019. Plaintiff contends that Burton failed to respond reasonably to Yokom's conduct.

---

[3] The complaint is not clear whether this letter was the original letter that had been requested by the hearing officer or a reproduction. In an attachment to the complaint, Plaintiff acknowledges that in "one line in a four or five page letter," Sawari inquired whether Plaintiff had received the information she sent concerning the National Prison Strike. (ECF No. 1-14, PageID.41–42.) Plaintiff suggests that the reference meant little to him because "99% of the letter" concerned the topic of his interest: the "good time" petition. (*Id.*, PageID.42.) Plaintiff learned at some point that Sawari included a pamphlet with her first letter, but the mail room rejected the pamphlet. That pamphlet contained an article discussing a national prison strike.

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages.

## II.      Failure to State a Claim

As noted above, pursuant to the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

8

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants Burton and Yokom retaliated against him in violation of the First Amendment.

## A.     Defendant Burton

Plaintiff fails to make specific factual allegations against Defendant Burton, other than his claim that Burton failed quickly and adequately to respond to his kites and grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant

Burton engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against Burton.

### B.    Defendant Yokom

Plaintiff alleges that Defendant Yokom retaliated against him for sending kites and filing grievances by (1) pushing to have Plaintiff removed from CPI, and (2) transferring Plaintiff to MCF.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon preliminary review, the Court concludes that Plaintiff sufficiently alleges facts that state retaliation claims against Defendant Yokom for pushing for his removal from CPI and for transferring him to MCF.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Burton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against Defendant Yokom remain in the case.

An order consistent with this opinion will be entered.


Dated: May 11, 2022                              /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                U.S. Magistrate Judge